# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **CLEVELAND HARDY**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15 C 1174 |
| ) | |
| **CITY OF CHICAGO**, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Cleveland Hardy ("Hardy") sued the City of Chicago ("City") and former Chicago Police Superintendent Gary McCarthy ("McCarthy"), the latter in his official and individual capacity, under 42 U.S.C. § 1983 ("Section 1983"), charging them with having deprived him of a sergeant's position in the Chicago Police Department ("Department") without due process of law in violation of the Fourteenth Amendment. Asserting that he was unlawfully demoted from his position without the procedures guaranteed by Department's Collective Bargaining Agreement ("CBA"), Hardy seeks damages, declaratory relief and reinstatement.

McCarthy and City have filed separate motions for summary judgment under Fed. R. Civ. P. ("Rule") 56(a). For the reasons explained in this opinion, both motions are granted and Hardy's case is dismissed.

## Factual Background

As part of the consent judgment in the long-pending Shakman v. Democratic Organization of Cook County litigation,[1] Department adopted a Hiring Plan that was negotiated

---

[1] Over a period of nearly a half century (the case was originally filed in 1969 as Case No. 69 C 2145), its scope has evolved (and expanded) substantially.

and agreed to with the plaintiffs and a federal monitor and was then approved by this District Court (C. St. ¶ 6).[2] Under the version of the Hiring Plan provided to this Court by the parties,[3] Department's Human Resources Department oversees the selection and promotion decisions for sworn titles (which includes sergeants) by Department and acts as a liaison between Department and City's Department of Human Resources ("Human Resources") (C. St. ¶ 10). Human Resources functions as the "gatekeeper to the City's processes governing actions covered by [the] Hiring Plan and Other Employment Actions" (C. St. ¶ 11; Hiring Plan at 8). In that capacity, a Human Resources Recruiter:

> shall suspend a requisition at any point in the hiring process when he or she has reason to believe that a Hiring Manager, Hiring Authority, or other City employee may have committed a violation of [the] Hiring Plan . . . (Hiring Plan at 34).

Of course the Hiring Plan is subject to other applicable laws as well as to the terms of Department's CBA. In particular CBA at 12 states that "[n]o sergeant covered by this Agreement shall be suspended, relieved from duty or disciplined in any manner without just cause."

Of special relevance to this case, Hiring Plan at 13-14 states that officers must meet certain requirements to be placed on the merit eligibility list for promotion to sergeant, including attaining a predetermined minimum score on a qualifying exam. In addition, Hiring Plan at 22-24 details a merit promotion process, which may be used to fill up to 30% of the vacant

---

[2] Citations to the parties' Statements of Material Facts will take the form "St. ¶ --" preceded by "C." for City, "M." for McCarthy and "H." for Hardy. Hardy's Responses to the City's and McCarthy's Statements will take the form "H. Resp. C. St. ¶ --" and "H. Resp. M. St. ¶ --", respectively. Defendants filed a joint response to Hardy's Statement of Additional Facts, and it will be cited "D. Resp. H. St. ¶ --".

[3] That was the 2011 Hiring Plan. Later amendments to the Plan were approved in Magistrate Judge Schenkier's June 16, 2014 Order of Substantial Finding Compliance and Dismissing the City of Chicago (Dkt. No. 3861 in the original 1969 case), but those amendments do not relate to the provisions at issue in this case (H. Resp. C. St. ¶ 7).

positions for each round of promotions. Through the merit promotion process any command staff below the rank of Deputy Superintendent may nominate individuals for promotion (id.). In turn the nominees' packets are reviewed by a merit board, the merit board makes non-binding recommendations to the Superintendent, and the Superintendent then selects members for promotion at his discretion (id. at 22-23). All nominees must appear on the merit eligibility list, which confirms that they have achieved the minimum score on the qualifying exam (id. at 22). Interviews are not required for merit promotions (id. at 22-24).

Cleveland Hardy has been employed by Department as a sworn police officer since 1991 (M. St. ¶ 1). During a period before the incidents that gave rise to this case, Hardy was assigned as a driver for Superintendent McCarthy (M. St. ¶ 2). At some point the two discussed whether Hardy would be interested in a promotion to sergeant (H. Resp. C. St. ¶ 26).

In February 2013 Department posted a merit process announcement, which opened the process for a round of merit promotions to the position of sergeant (C. St. ¶ 34). At that point McCarthy and Hardy again discussed the latter's interest in a promotion (H. St. ¶ 7). When Hardy indicated that he was interested in being promoted to sergeant, McCarthy asked his chief of staff Gus Miniotis ("Miniotis") to see if someone would be interested in nominating Hardy (H. St. ¶ 8). Miniotis then asked Commander Jonathan Johnson ("Johnson") to do so, and Johnson agreed (M. St. ¶¶ 26, 28). But again, to be promoted through the merit process nominees must have passed the written qualifying examination and appear on the merit eligibility list (C. St. ¶¶ 9, 19, 23, 34). And unknown to McCarthy and Johnson, Hardy was well aware that he had failed the qualifying exam (M. St. ¶¶ 25, 27, 28).

In March 2013 Johnson nominated Hardy for merit promotion to sergeant without confirming that he had passed the qualifying exam (M. St. ¶ 28). Sergeant Daniel Baroli then

informed Hardy that Johnson had nominated him for sergeant and instructed him to work with Department to put together his nomination packet (M. St. ¶ 32). At some point after Hardy submitted his nomination packet, he was interviewed by McCarthy and other members of the command staff (M. St. ¶ 33). Without verifying that Hardy was on the merit eligibility list, Department's Human Resources Department forwarded Hardy's nomination packet to the merit board, which was responsible for reviewing the packets and offering recommendations for merit promotions (C. St. ¶¶ 22, 37-39). On April 5, 2013 the merit board issued its recommendations but did not recommend Hardy for a merit promotion (C. St. ¶ 40).

In the spring of 2014, not bound by the merit board's recommendations and unaware that Hardy had failed the qualifying exam, McCarthy selected Hardy for promotion to sergeant (M. St. ¶ 34; C. St. ¶ 41). Hardy then attended sergeant training in the spring of 2014 (M. St. ¶ 34). On June 11 Hardy completed that training and was issued a sergeant's star and shield (D. Resp. H. St. ¶ 12). After Hardy had completed sergeant training he was assigned to the 7th District as a sergeant on June 15 (C. St. ¶ 43; M. St. ¶ 35). Throughout that process Hardy never expressed concern to McCarthy or anyone else that he had failed the qualifying exam (M. St. ¶ 31).

At that point Human Resources had not yet approved Hardy's promotion (M. St. ¶ 37). Then on June 23 Elizabeth Opel ("Opel"), a Human Resources recruiter, reviewed Hardy's merit promotion paperwork and noticed a problem: Hardy's name did not appear on the merit eligibility list because he had not passed the qualifying exam (C. St. ¶¶ 45, 46). Opel then informed her supervisor Christina Batorski, who notified Human Resources Deputy Director Rose Sprinkle ("Sprinkle") (M. St. ¶ 38). Sprinkle in turn notified Department's Chief of the Bureau of Administration Eugene Williams ("Williams") that there was a problem with Hardy's

promotion -- specifically, that the promotion could not be processed because Hardy did not meet the eligibility requirements (M. St. ¶ 39, 41). Williams relayed the bad news to Hardy on June 25, informing him that he was not on the merit eligibility list because he had not passed the written qualifying exam and that he must return to his previous rank (C. St. ¶ 49; H. St. ¶ 22).

## Legal Standard

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider evidentiary records in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). Courts "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" in resolving motions for summary judgment (Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (id.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## Due Process Claim

To prevail on his Section 1983 claim Hardy must establish that he had a legitimate property interest in the sergeant position, which entitled him to due process in the event he was deprived of the position (Bailey v. City of Lawrence, 972 F.2d 1447, 1448-49 (7th Cir. 1992)). As the seminal opinion in Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972) teaches, to have a property interest in a position:

> [A] person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

Moreover (id.):

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

And once a plaintiff has established that he was deprived of a legitimate property right, he must then show that the procedures used to take it from him were constitutionally inadequate (Leavell v. Illinois Dep't of Natural Resources, 600 F.3d 798, 804-05 (7th Cir. 2010)).

Hardy argues that he suffered a demotion without due process when Department revoked his sergeant's position after he underwent training, was issued a badge and worked as a sergeant for 11 days. It is true that Department's CBA at 12 affords sergeants some protections from suspensions and other disciplinary actions without "just cause." Hence Hardy seeks to claim that by unceremoniously revoking his position after learning that he had not passed the qualifying exam, Department violated the CBA and deprived him of due process. But City and McCarthy argue that Hardy never secured a property interest in the sergeant position -- and, indeed, he was not actually demoted from the position -- because his nomination for sergeant was void from the day he received it. This Court agrees.

It is clearly established that if an appointment is invalid from the start, it does not confer a property right in the position on the appointee (Bailey, 972 F.2d at 1449). And if an appointee does not meet certain legal requirements at the time of his claimed appointment, the purported appointment does not confer property rights even if he served in the position for some amount of time (Hannon v. Turnage, 892 F.2d 653, 658-59 (7th Cir. 1990)). Because Hardy unquestionably failed to meet the qualifications for sergeant at the time of his claimed appointment, it follows

that he never attained a property interest in the rank of sergeant because it was never lawfully his.

Clearly Department made an unfortunate -- and really inexcusable -- error when it initiated and carried out Hardy's promotion before confirming that he had passed the exam and was on the merit eligibility list. Only after Hardy had completed training, received his sergeant's badge at a ceremony and reported for duty for a full 11 days did the Human Resources catch Department's unforced error. Though Hardy is outraged by that mistake, that is precisely what the events amount to -- an unfortunate mistake. If carried through, the promotion would have violated the Department's Hiring Plan, which unequivocally requires that those promoted to sergeant via the merit promotion process must appear on the merit eligibility list (Hiring Plan at 14, 22). And to appear on the merit eligibility list for sergeant the candidate must "attain or exceed the predetermined minimum test score," which Hardy failed to do (id. at 14). Ultimately Department did not have the authority to override its own Hiring Plan to promote Hardy (see Hannon, 653 F.3d at 658-59; see also Hiring Plan at 4).

Hardy offers several arguments in response. And though summary judgment standards require this Court to view all facts in a light most favorable to the nonmovant, "[a] party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it'" (Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1270 (7th Cir. 1996)). By that measure this Court rejects the notion that Hardy's artillery, which is summarized below, raises a genuine issue of material fact to suggest that defendants acted unlawfully when they halted Hardy's promotion.

First Hardy argues that Department is not legally obligated to follow its own Hiring Plan, and he follows up on that by contending that in practice Department does not follow the

procedures outlined it the Hiring Plan, instead deciding arbitrarily which requirements to enforce and when. But Hardy has offered nothing plausible to support either notion.

As to the former, Hardy points to the fact that on June 16, nine days before his promotion was suspended, Magistrate Judge Scheinker entered an Order of Substantial Compliance removing the consent judgment from federal court oversight (H. Resp. C. Mem. 3).[4] But nowhere does that Order state (or even suggest) that Department will henceforth be absolved of obligations codified in the agreements and plans reached during the remedial phase of Shakman. Moreover, Hiring Plan at 4 itself specifies formal procedures that City must follow if it wishes to modify the Plan, which include a public notice and comment period as well as notice to the plaintiffs and to the court-appointed monitor. And of course Hardy does not assert that Department at any point modified the Hiring Plan in accordance with those procedures to relieve sergeant nominees of the obligation to pass the exam. So it is quite plain that Department continued to be bound by the Hiring Plan -- including its requirement that all sergeants pass the qualifying exam -- when it stopped Hardy's promotion.

As to Hardy's assertion that Department is arbitrarily irregular in enforcing Hiring Plan requirements, he attempts to posit several examples that even if true would not support his position. They will be dispatched here seriatim.

First, Hardy claims that McCarthy did not follow the interview procedures in the Hiring Plan because many promotion candidates were interviewed by McCarthy himself rather than by the merit board (H. Resp. C. Mem. 3-4). In that respect McCarthy confirmed that he and his deputies chose to interview candidates themselves instead, to cut down on the steps required to

---

[4] Citations to Hardy's Memorandum in Opposition to the City's Motion for Summary Judgment will take the form "H. Resp. C. Mem. --," and citations to the City's Reply will take the form "C. Reply --."

hire sergeants under the merit process (McCarthy Dep. 53:14 - 55:5). But nothing in the merit selection provisions of the Hiring Plan states that nominees must be interviewed by the merit board (see Hiring Plan at 22-23). So that claim fails to carry water.

Second, Hardy asserts that Human Resources did not follow the escalation procedures listed in the Hiring Plan when it suspended Hardy's promotion (H. St. ¶ 25). Those procedures (Hiring Plan at 34) require that the Office of the Inspector General ("IGO") Hiring Oversight "evaluate the circumstances surrounding the escalation" and that the "escalations shall be logged (the 'Escalation Log') by IGO Hiring Oversight." There is little in the record as to whether the suspension of Hardy's promotion was recorded according to Hiring Plan procedures. But the pertinent question is not whether the incident was handled properly on the whole (defendants do not claim that it was) -- it is rather whether handling things according to the escalation procedures would have changed the ultimate result. Nothing suggests that it could have, for in the end Department did not have the authority to promote someone who did not meet the requisite qualifications. For his part, Hardy does not assert that he met the qualifications for sergeant when he was nominated, and he offers no reason why a review of the incident by the IGO Hiring Oversight or a logging of the incident (if in fact Human Resources had neglected to complete those procedures) could have changed Department's decision to stop Hardy's promotion and send him back to his post as a patrol officer.

Third, Hardy posits vague claims that others have been promoted despite not meeting certain requirements, specifically that Human Resources forwarded new additions to the list without completing the required hire certifications (H. Resp. C. Mem. 6). According to Hardy, on June 24 Sprinkle forwarded three more names to be included on the sergeant's list, none of whom were on the earlier preservice training notice, the hire certification signed by McCarthy or

the personnel order of assignments (id.). Two were individuals who had previously been removed as not meeting the education requirement, while the third was an additional merit promotion (id.). Defendants dispute that, saying (1) that Sprinkle was actually confirming with Opel the reasons why two of those sergeants were not being promoted and (2) that the third, who did meet the requirements, was a merit promotion (D. Resp. H. St. ¶ 32). But the Hiring Plan does not even specify education requirements for sergeants. And either way Hardy's contentions shed no light on anything so basic as Department's promotion of people who had not met the express requirement of passing the qualifying exam, while it was holding back Hardy's promotion for the same reason.

Finally, Hardy claims that he heard from First Deputy Wysinger ("Wysinger") that in two other cases people had been promoted when they lacked qualifications and that the superintendent had stood by his decision, but that he does not know specifically if the two individuals had failed the sergeant's test (H. Resp. C. St. ¶¶ 52-53). In all events, though, that secondhand assertion -- inadmissible on hearsay grounds -- does not suffice to create a genuine issue of material fact. On that score such cases as <u>Sow v. Fortville Police Dep't</u>, 636 F.3d 293, 301 (7th Cir. 2011) and other cases cited there confirm the fundamental principle that it "is correct that a court may consider only admissible evidence in assessing a motion for summary judgment." Hence Hardy's recounting of what Wysinger assertedly said simply misses the mark for Rule 56 purposes.

### Other Claims

To hold McCarthy personally liable for what Hardy has unpersuasively charged as a due process violation, "[a] causal connection, or an affirmative link, between the misconduct complained of and the officer sued is necessary" (<u>Wolf-Lillie v. Sonquist</u>, 699 F.2d 864, 869 (7th

Cir. 1983). And because it has been demonstrated in several ways that Hardy did not suffer a due process violation, there is no predicate under which to hold McCarthy liable in his personal capacity. Hence Hardy's claim for a writ of mandamus also fails because he has no right to reinstatement as a sergeant.

## **Conclusion**

For the reasons stated in this opinion, both the City's and McCarthy's motions for summary judgment (Dkt. Nos. 172 and 169) are granted. This action is dismissed.

_____
Milton I. Shadur
Senior United States District Judge

Date: May 2, 2017